IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ROY FRANK, and )<br>BRENDA FRANK, involuntary plaintiff )<br>)<br>    Plaintiffs, )<br>)<br>v. )<br>)<br>NATIONWIDE MUTUAL FIRE )<br>INSURANCE COMPANY, )<br>)<br>    Defendant. ) | Case No. 3:04cv0025<br>JUDGE TRAUGER |

### MEMORANDUM

Pending before the court is the Amended Motion for Summary Judgment filed by defendant Nationwide Mutual Fire Insurance Company (Docket No. 31), to which plaintiff Roy Frank has responded (Docket No. 47), and defendant has replied (Docket No. 53). For the reasons stated herein, the defendant's motion will be denied.

### I. FACTS and PROCEDURAL BACKGROUND

On or about March 21, 1994, involuntary plaintiff Brenda Frank signed, on behalf of herself and her husband, plaintiff Roy Frank, an application for insurance with defendant Nationwide Mutual Fire Insurance Company ("Nationwide") to cover their property located at 3154 Maxey Road in Cedar Hill, Tennessee. (Brenda Frank Depos. pp. 105–06) The one-page application requests, among other things, disclosure of the applicants' "Past Losses." (Docket No. 32, Exh. 1) Underneath this request for "Past Losses," the application provides an

1

opportunity for insurance applicants to "Explain any 'Yes' and "Other' Answers" provided elsewhere in the application. (*Id.*) On the Franks' application, the answer "None" was given in response to Nationwide's inquiry regarding "Past Losses," and the explanation line was left blank. (*Id.*)

Immediately above the signatures of Brenda and Roy Frank on the Nationwide application for insurance is the following language:

> I hereby declare that the facts stated in the above application are true and request the company to issue the insurance and any renewals thereof in reliance thereon. *** Refer to Policy and Declarations for complete coverage information.***

*Id.* Nationwide approved the application and, effective April 28, 1994, plaintiffs Roy and Brenda Frank were issued a "Golden Blanket" insurance policy numbered "6341 MP 661564" to cover the Maxey Road property. (*Id.*; Affidavit of Delma Locke ¶ 3) Thereafter, each year between 1994 and 2002, Nationwide issued a "Golden Blanket Policy Declaration" extending the policy period on Policy No. 6341 MP 661564 to cover the up-coming year in exchange for an "Annual Renewal Premium." (Docket No. 48-9; *see also* Affidavit of Roy Frank ¶ 9)

On December 22 and December 26, 2002, two fires destroyed the Frank property located at Maxey Road. Frank gave notice of the loss and, within 90 days of the fires, rendered the required statement of proof of loss to Nationwide. (Complaint ¶ 4) Nationwide did not provide coverage within 300 days, and, on December 16, 2003, Roy Frank filed a Complaint in the Circuit Court for Robertson County, Tennessee, seeking the full payment under policy No. 6341 MP 661564[1] and recovery, pursuant to Tenn. Code Ann. 56-7-105, for Nationwide's alleged bad

---

[1]The Complaint, however, alleges that this Policy was "issued and delivered" to plaintiff and his wife on April 28, 2002, as opposed to April 28, 1994. (Complaint ¶ 2) According to Roy Frank, each Declaration issued between 1994 and 2002 constituted a "new" insurance

2

faith in withholding payment. (Complaint ¶ 8)

On January 14, 2004, the defendant removed the action to this court (Docket No. 1) and, on March 2, 2004, filed its Answer (Docket No. 3) Nationwide asserts, among other things, that it is not liable to the plaintiff for losses sustained as a result of the December 2002 fires because, due to a material misrepresentation regarding "Past Losses" in the Franks' application for insurance, the policy was void from its inception, or *ab initio*, pursuant to Tenn. Code Ann. § 56-7-103. (Docket No. 3)

Roy Frank does not appear to dispute that a previous home owned and insured by Mrs. Frank, in which the Franks lived as a married couple, was partially damaged by fire in 1993. (Brenda Frank Depos. pp. 45–49) According to Mrs. Frank, the fire that damaged the home "was definitely arson." (*Id*. at p. 54) Mrs. Frank's insurance carrier at the time, State Farm, paid the claim in the amount of $36,000 for the damage caused by the fire, and, after the repairs were made, the property was sold for $68,000. (*Id*. at pp. 47, 49, 109) Mrs. Frank stated that "State Farm, I think after that fire, they went way up on me or something...," which is the reason she began talking with Ramsey Phillips, an agent of Nationwide, to obtain coverage for the Maxey Road property. (*Id*. at p. 106) In her deposition testimony, Mrs. Frank admits to signing the completed Nationwide application for insurance, on behalf of her and her husband with his permission, but she neither admits nor denies that the application contained a misrepresentation regarding the Franks' past losses. While Mrs. Frank testified that the agent "advised me all down the lines, and we went from there," there is no evidence in the record as to what that advice consisted of. (*Id*. at p. 107) When questioned regarding whether the 1993 fire resulted in

---

policy.

3

a "total fire loss," Brenda Frank answered in the negative. (*Id*. at p. 49)

Nationwide argues that the Franks' failure to disclose the 1993 fire loss on their 1994 application for insurance renders the policy void. According to the affidavit of Delma Locke, Jr., the Underwriting Product Consultant for Nationwide, the plaintiffs' failure to disclose the prior loss history denied Nationwide the ability to further investigate the insurability of the plaintiffs. (Docket No. 32, Exh. 2) On April 7, 2004, Nationwide sent notice to Mr. and Mrs. Frank informing them that it had a "premium refund check of $4,045.00 made payable to Roy and Brenda Frank representing a refund of all premium paid on the Nationwide policy," because "[a]s you know, this policy was voided due to the misrepresentation in the application concerning the prior loss history which was not disclosed." (Docket 48-10)

The defendant moved for summary judgment on August 26, 2004 (Docket No. 21) on the grounds that the plaintiffs' material misrepresentation in their application for insurance materially increased their risk of loss and voided the policy upon inception pursuant to Tenn. Code Ann. § 56-7-103 (Docket No. 22).[2] This motion was renewed on April 22, 2005. (Docket No. 31)

## II ANALYSIS

A. <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[2]Thereafter, this case was administratively closed pending resolution of bankruptcy matters. (Docket No. 29)

4

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd*., 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative,"

5

or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

B.  Applicable Law

Section 56-7-103 of the Tennessee Code Annotated provides as follows:

> No written or oral misrepresentation or warranty therein made in the negotiations of a contract or a policy of insurance, or in the application therefor, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.

"Under this statute, to avoid coverage the insuror [sic] must first prove that the answers in the application were false; then it must prove *either* that the false answers were given with intent to deceive the insuror [sic] *or* that the false answers materially increased the risk of loss." *Womack v. Blue Cross and Blue Shield of Tenn*. 593 S.W.2d 294, 295 (Tenn.1980) (emphasis added). "If a misrepresentation is found to increase the risk of loss, then the policy is voidable under the statute even if the misrepresentation was innocently made." *Howell v. Colonial Penn Insur. Co.*, 842 F.2d 821, 822–23 (6th Cir. 1987) (citing *Lane v. Travelers Indemnity Co.*, 499 S.W.2d 643 (Tenn. App. 1973)).

The threshold question of whether an insured's answer to a question on an application is true or false is normally a question of fact, unless the minds of reasonable men could reach only one conclusion as to whether the answer is true or false. *Womack*, 593 S.W.2d at 295. The same is true if the insurer claims that the false answer was made with the intent to deceive. *Id*. However, if the insurer claims that the false answer materially increased the risk of loss, a

6

question of law for the court arises. *Id*.

C.      Misrepresentation

As signaled above, the concept of "misrepresentation" is separate and distinct from the concepts of "intent to deceive" or "increase in the risk of loss." *Gatlin v. World Service Life Insur. Co*., 616 S.W.2d 606, 608 (Tenn. 1981). "The latter elements are not analyzed at all until and unless a matter has been 'misrepresented," *Id*., and the insurer has the burden of proving that an answer on an insurance application was false. *Tapco Underwriters, Inc., v. Bragg*, Nos. 94-5419, 94-5580, 1995 WL 399065, at **2 (6th Cir. July 6, 1995); *Howell*, 842 F.3d at 822. Here, Nationwide asserts that the Franks gave a false answer in response to the question on the application regarding "Past Losses." Nationwide has submitted proof, through the deposition testimony of Mrs. Frank, that, prior to the filling out of the insurance application, a house that was owned by Mrs. Frank and lived in by both Mr. and Mrs. Frank had suffered substantial damage caused by fire in 1993, for which $36,000 for repairs was recovered from Mrs. Frank's then-current insurance company. Under these facts, Nationwide contends that the minds of reasonable men could reach only one conclusion as to whether the answer "None," given in response to the application question "Past Losses," was false.

Plaintiff Roy Frank responds that the term "Past Losses" is ambiguous and, for that reason, Nationwide cannot rely on the answer provided in the insurance application to establish a misrepresentation. According to the plaintiff, Mrs. Frank did not consider the 1993 fire damage to her prior home to constitute a "past loss" within the meaning of the application, because she did not believe that the 1993 fire resulted in a "total fire loss." (Docket No. 48 p. 13) In other words, plaintiff asserts that Mrs. Frank believed and assumed that the term "Past Losses"

7

referred only to "total losses" and, therefore, she did not make an untruthful representation to Nationwide when she failed to disclose the 1993 loss in the 1994 Nationwide application for insurance.

In order to determine whether a matter has been misrepresented under section 56-7-103, "it must first be determined what the insurer asked, required, or expected the applicant to represent." *Gatlin,* 616 S.W.2d at 608; *see also Howell v. Colonial Penn Ins. Co.*, 842 F.2d 821, 823 (6th Cir. 1987)   Where a question on an application is specific and unambiguous, it can be easily determined whether the answer is true or not. *Gatlin*, 616 S.W.2d at 610 (quoting *Ford Life Ins. Co. v. Jones*, 563 S.W.2d 399, 402–03 (Ark. 1978) (Harris, C.J., concurring)). However, where a question on an application is broad and ambiguous, it is a question of fact whether the answer given to the question was true or false. *Ferrell v. Nationwide Mutual Fire Insur. Co.*, No. 86-230-II, 1986 WL 13505 (Tenn. Ct. App. Dec. 3, 1986) (citing *McDaniel v. Physicians Mutual Insurance Co.*, 261 S.W.2d 391 (Tenn. 1981)).   Under Tennessee law, a contractual term is ambiguous only if it is "of uncertain meaning and may fairly be understood in more ways than one."  *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975).

In *McDaniel*, the Supreme Court of Tennessee found that the issue of whether an insured's answer to a question in his insurance application regarding the existence of other insurance was false should have been submitted to the jury and not found to be a misrepresentation as a matter of law so as to void the policy.  There, the plaintiff argued that he did not disclose the existence of his disability insurance because the application asked only about "sickness and accident" insurance, and not about disability insurance.  The Court reversed the lower court's determination that the term "sickness/accident" was synonymous with "disability"

8

and that, as a result, the plaintiff gave a false answer as a matter of law.  Instead, the Court held that the question was ambiguous and that the issue of misrepresentation should have been submitted to the jury, with the jury to determine, under all the facts and circumstances, whether the terms were synonymous, or whether the plaintiff could have reasonably believed the question referred only to medical and hospital insurance and not disability coverage.  In other words, because reasonable minds could differ as to whether the answer given by the plaintiff to this ambiguous question was true or false, the issue was not one for the court to determine as a matter of law.

Sixth Circuit courts have similarly held, in interpreting the misrepresentation defense available under Tenn. Code Ann. § 56-7-103, that, where a question in an application for insurance cannot be said to be unambiguous as a matter of law, the issue of whether an answer was true or false is one for the trier of fact.  For example, in *Tapco Underwriters*, the Sixth Circuit cited, with implicit approval, the district court's denial of an insurer's motion for summary judgment in its declaratory judgment action to void a policy of insurance *ab initio* due to alleged misrepresentations in the insured's application for insurance, where the district court had determined that genuine issues of fact existed as to whether insureds gave a false answer in response to the application question regarding "Loss History."  1995 WL at \*\*1.  The district court had determined that the term "Loss History" was ambiguous because it "may fairly be understood in more ways than one," such that a jury question was created as to the meaning of the language and whether the insured had falsely stated his loss history.  *Id*.  Following a jury trial in which the jury found for the insured, Tapco moved for a directed verdict.  On appeal from the district court's denial of the directed verdict motion, Tapco argued that it was entitled to

9

judgment as a matter of law because there was no ambiguity in the term "Loss History," and thus, as a matter of law, the insureds misrepresented their loss history on the application when they failed to disclose seven prior trailer fires. The insured, however, claimed that these fires were not "losses" because the trailers were not insured and no claims were filed thereon. The Sixth Circuit, in affirming the district court's denial of the insured's motion for judgment as a matter of law, agreed that the term "Loss History" could not be said to have solely the meaning urged by Tapco– that the term "Loss History" applied to all losses, whether or not claims were filed as a result– and, thus, agreed that the term was not unambiguous as a matter of law. The Court additionally held that judgment as a matter of law was not proper because,

> [m]oreover, as the drafter of the language, Tapco could easily have tailored the application to elicit whatever information it needed. Tapco assumed the risk of receiving a variety of responses when it used the vague and general heading "loss history" over a blank space on a generic application form, rather than asking for the specific information it desired.

*Id.* at \*\*3.

Similarly, in *Sosebee v. Allstate Insur. Co.*, No. 1:02-Cv-030, 2003 WL 21920924 (E.D. Tenn. May 16, 2003), defendant insurer's request for summary judgment based on an alleged false answer in the insured's application for insurance was denied due to the ambiguous nature of the question asked. The application in *Sosebee* requested applicant to disclose his "5 YEAR LOSS HISTORY including losses at present and prior residences....," *Id.* at \*2, and the defendant insurer argued that plaintiff's failure to disclose a theft of personal property that occurred at his residence two months prior to the submission of his application for insurance constituted a false answer. *Id.* at \*1–2. Plaintiff responded that, because he believed that the insurer was only inquiring about losses involving actual claims for insurance coverage, his lack

10

of disclosure of the prior theft, for which no claim was filed, did not constitute a misrepresentation. Denying the insurer's motion for summary judgment, the court found the existence of a genuine issue of material fact as to whether plaintiff Sosebee's answer to the question about loss history on the application was false in light of the ambiguous nature of the terms "Loss History" and "losses." The court concluded, relying on *Tapco Underwriters,* that these terms "are ambiguous and reasonably capable of two different meanings and interpretations" and "can reasonably be interpreted to mean either: (1) only losses where claims are filed with an insurer; or (2) all losses, regardless or whether claims for the losses are made to an insurer." *Id*. at *4. The court likewise opined, as the Sixth Circuit had in *Tapco*, that:

> As the drafter of the language, Allstate could have more precisely tailored the application to elicit the specific information it needs. Allstate assumed the risk of receiving various different responses when it used the general terms "loss history" and "losses" without clarifying and adequately explaining the specific information it desired. Since Allstate did not clearly specify the loss history information it wanted, Jerry Sosebee's subjective view and answer to the loss history portion of the application is not necessarily a false representation. In sum, Allstate is not entitled to summary judgment on the issue of misrepresentation because the language used by Allstate in its application is ambiguous and reasonable minds can differ on the veracity of Jerry Sosebee's statement about loss history.

*Id*. at *4.

As was the case in *Tapco* and *Sosebee*, the insurer here could have more narrowly drafted its insurance application to extract the specific information it desired, yet failed to do so. The Nationwide application for insurance is a standard form that simply states "Past Losses:" and leaves a blank space for the applicant's answer. There is no instruction on the application itself as to the meaning of the term "Past Losses," and there is no evidence before the court that any instruction was otherwise given to the Franks regarding its meaning. In failing to clarify or

adequately explain the meaning of the general term "Past losses," Nationwide assumed the risk of receiving a variety of responses. Although the term most likely is clearly understood by those in the insurance industry, to laymen, such as the Franks, the term is of uncertain meaning and can be fairly understood in more ways than one.[3] *See Tapco Underwriters*, 1995 WL at **3 (accepting plaintiff insured's interpretation of an application term as one possible meaning, such that term was deemed ambiguous, Court considered fact that insured was an "insurance purchaser with an eighth grade education"). Under these circumstances, it is for the jury, and not the court, to decide whether the term "Past losses" referred to all losses, whether partial or total, or whether Mrs. Frank could have reasonably believed that the question referred only to "total losses."

As the Tennessee Supreme Court has consistently held, "[w]hether the insured's answers to the questions on the application are true or untrue is to be determined by the trier of fact and when a jury is demanded, cannot be taken from them and decided by the trial judge unless the minds of reasonable men could reach only one conclusion as to whether the answers were true or false." *McDaniel*, 621 S.W.2d at 393 (quoting *Womack*, 593 S.W.2d at 295). Because the court cannot say, on the record before it, that reasonable men could reach only one conclusion as to whether the answer given by the Franks on their application for insurance was true or false, a situation created by the ambiguous nature of the question asked, summary judgment is not

---

[3]The court notes that the defendant has not addressed, much less distinguished, the cases cited above finding similar terms such as "Loss History" and "Losses" ambiguous, nor has it presented any caselaw to the contrary.

12

appropriate.[4]

As for the legal question regarding whether the alleged misrepresentation increased the risk of loss, the court will reserve judgment until a determination as to misrepresentation has been made by the trier of fact.

### III. CONCLUSION

For these reasons, the Amended Motion for Summary Judgment filed by defendant Nationwide will be denied.

An appropriate order will issue.

ALETA A. TRAUGER
U.S. DISTRICT JUDGE

---

[4]Given this ruling, plaintiff's additional arguments in opposition to the defendant's Amended Motion for Summary Judgment need not be addressed.